UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
FIONA GREENIDGE,

                              Plaintiff,

    -against-

NYCHA NEW YORK CITY HOUSING
AUTHORITY,

                              Defendant.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**

15-CV-1366 (SLT)

**TOWNES, United States District Judge.**

    Plaintiff Fiona Greenidge, proceeding *pro se*, brings this action against her landlord, defendant New York City Housing Authority ("NYCHA"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Fourteenth Amendment of the United States Constitution. The Court grants plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. However, for the reasons discussed below, this action is dismissed because Plaintiff's pleading fails to state a claim upon which relief may be granted.

## *BACKGROUND*

    The pleading in this action consists of a one-page complaint (the "Complaint"), an attachment consisting of a 23-page letter addressed to an unspecified "Judge" and signed by plaintiff (the "Attachment"), and various exhibits. Although the Complaint names the NYCHA as the only defendant, the Attachment alleges an amorphous conspiracy between employees of the NYCHA, its Law Department, Brooklyn Landlord Tenant Court, and the New York City Police Department ("NYPD") "to sabotage [plaintiff's] life." Attachment, p. 1. Some of the allegations relating to the NYCHA and Landlord Tenant Court were also contained in the pleading in a prior case—*Greenidge v. Brooklyn Landlord Tenant Court*, No. 15-CV-1144

(SLT)—which was dismissed *sua sponte* on March 9, 2015, for failure to state a claim on which relief could be granted. However, the prior case did not name the NYCHA or any of their employees as defendants, and dealt primarily with events which transpired in the Brooklyn Landlord Tenant Court. In contrast, the pleading in this case deals primarily with events which transpired at the Van Dyke Houses, the NYCHA facility in which plaintiff resides.

The following facts are drawn from the Attachment, the allegations of which are assumed to be true for purposes of this Memorandum and Order. Plaintiff has been a tenant of the NYCHA for over ten years. Attachment, p. 1. She claims that she applied to live in public housing because the NYCHA "was advertising that tenants who work" were "needed in Housing Authority buildings," and she was then not only working, but both a college and trade school graduate. *Id.*, pp. 1-2. Nonetheless, plaintiff was on a waiting list for three years before she was approved for an apartment. *Id.*, p. 1.

In 2011, plaintiff apparently became involved in several disputes with her landlord. First, the NYCHA allegedly violated their own regulations by requiring plaintiff to pay rent in excess of 30% of her income. *Id.*, pp. 3-4. In December 2011, plaintiff had a hearing on this issue at the Borough Management Office, after which a "Judge/Hearing Officer requested that ... Van Dyke Houses management recalculate the rent to reflect [plaintiff's] income." *Id.*, p. 3. Although the manager of the Van Dyke Houses recalculated the rent in February 2012, the new rent still did not accurately reflect plaintiff's income. *Id.*, p. 4. Plaintiff's rent has not been readjusted since then, even though plaintiff notified Van Dyke Houses Management that her income fell further when she started collecting unemployment insurance in May 2012. *Id.*

Second, NYCHA has refused to remove plaintiff's son's name from the lease. Plaintiff's son has a seasonal job as a security guard in the Bronx and is staying in New Jersey. *Id.*, pp. 4-5. Management is allegedly aware of the fact that he resides in New Jersey because the manager of the Van Dyke Houses has seen his car, which has New Jersey license plates. *Id.* Nonetheless, the management office has refused to remove plaintiff's son's name from the lease, which continues to list the son as an "authorized tenant." *Id.*, p. 5.

Despite these disputes, plaintiff apparently wants to work for the NYCHA. She applied for a job as a Housing Assistant through the Department of Citywide Administrative Services, and was interviewed in October 2014. *Id.*, p. 17. Plaintiff believes she "passed" the interview because she "answered all of the interview questions thoroughly." *Id.* Yet, the NYCHA did not offer her a job. *Id.*, p. 17.

Although the Attachment alleges that plaintiff is "multiracial," and is of Barbadian and English descent, *id.*, p. 18, it does not attribute NYCHA's failure to hire plaintiff to discrimination based on these protected characteristics. Rather, plaintiff alleges that she "cannot gain employment" because she has been "placed on observation by the NYPD." *Id.*, p. 17. Plaintiff alleges that "[t]he local NYPD precinct has been observing [her] apartment through their Vipor Unit Police Surveillance Cameras." *Id.*, p. 6. Plaintiff denies that the NYPD has any legitimate reason to conduct surveillance, expressly stating that she does "not sell drugs" and that her son is "not a troublemaker." *Id.*, p. 6. Rather, plaintiff alleges that she "was placed on observation by the local NYPD ... after [she] passed the Correction Officer Exam." *Id.*

Despite the fact that the NYPD is not a party to this action, plaintiff's pleading contains detailed allegations regarding alleged police misconduct. Plaintiff speculates that her downstairs

neighbor, whose name is either Tracey Bauman or Tracey Ricketts, and her next-door neighbor, Wanda Bauman, were placed in those apartments at the behest of the NYPD in 2009 or 2010. *Id.*, pp. 7-8. Plaintiff believes that "the local NYPD Precinct or police officials are familiar with" these tenants, and that "crooked cops use them to make false arrest[s] ... and false police reports." *Id.*, p. 9. These neighbors, who are apparently related, are "constantly stalking" plaintiff and her son, giving prison inmates her "mailing address to use," and invading plaintiff's privacy. *Id.*, pp. 7-8. In addition, an unnamed "Police Official" has been "using" the neighbors to "remove items from [plaintiff's] apartment," including "files, tax records, pictures, clothing, antiques[,] etc." *Id.*, p. 10.

Plaintiff alleges that the NYPD has been engaged in "an illegal operation" in plaintiff's building since at least 2012. *Id.*, p. 15. "[U]sing false claims by gang affiliates" and a Housing Assistant, Ms. Eliot, *id.*, the police searched plaintiff's apartment in 2008 without a warrant and removed items from plaintiff's apartment. *Id.*, pp. 10-11. In addition, the police or unspecified police officials illegally hacked into plaintiff's computer and allowed other tenants to access its files, *id.*, 12; harassed plaintiff by "bang[ing] on [her] door very hard occasionally" and planting drugs in her apartment, *id.*, p. 13; had plaintiff, who has never failed a psychological exam, taken to psychiatric facilities on at least two occasions in December 2012, *id.*, p. 9; and violated her intellectual property rights by making curtains identical to those that she designed and made for her own apartment. *Id.*, pp. 13-14. Plaintiff has complained to both the Civilian Complaint Review Board and NYPD Commissioner Bratton, but apparently no investigation has taken place. *Id.*, pp. 11, 13.

NYCHA employees have allegedly facilitated this activity in two ways. First, they have provided information from plaintiff's tenant file to a woman named Lisa Kerner, who then gave "other tenants" information such as plaintiff's age, employer, and "how old [Kerner] thinks [plaintiff] was when [plaintiff] gave birth ...." *Id.*, p. 2. Second, they have allowed ineligible tenants, including their own relatives and people who are related to one another, to reside in apartments in the Van Dyke Houses illegally. *Id.*, p. 6. According to the pleading, "[t]his is a conflict of interest, because a tenant who is not a law abiding citizen can use his/her family to lie, when a crime is committed or to cause a tenant to be evicted." *Id.*, p. 7.

Plaintiff has twice attempted to move, but her efforts have been thwarted. In 2011, she applied for an apartment through an agency called RPM Management. Although she was "called for an interview" and "allowed to view RPM's apartments," she was not offered an apartment. *Id.*, p. 15. Plaintiff theorizes that the tenant in the apartment below hers learned that plaintiff was attempting to move out by "connecting to [plaintiff's] computer;" that unspecified "[e]mployees in NYCHA Van Dyke Houses Management Office informed the other tenants" that plaintiff was attempting to move, and that "a Police Officer from the local Police Department connected to RPM Management to prevent" plaintiff from moving because unspecified persons "wanted to rob [plaintiff] of everything ... before [she] moved out of the apartment." *Id.*, p. 16. Following the interview with RPM, plaintiff's son was assaulted and sustained life-threatening injuries that required surgery. *Id.*, pp. 15-16.

In 2013, plaintiff requested that NYCHA transfer her to another apartment. *Id.*, p. 16. In connection with that request, plaintiff wrote a letter which stated that she was being stalked by tenants and that her son had been "assaulted as a result of being stalked." *Id.* However, when

5

she went to the NYCHA office responsible for transfers, there were "about a dozen Police Officers standing outside observing [plaintiff]." *Id.*, p. 17. In addition, plaintiff was passed by a neighbor's son, who had been "told to follow [plaintiff]" on his motorbike. *Id.* The NYCHA denied her request to transfer.

In April 2014, plaintiff "went to drink ... from a bottle of Cola," and discovered that it had been contaminated with shoe polish. *Id.*, p. 14. Plaintiff had heard one of her neighbors mention "shoe polish" a few days earlier, and believes that she "was poisoned by the tenants that have been stalking [her] apartment ...." *Id.* Since those tenants were "being used to cause [plaintiff] a problem, by crooked cops," they were not arrested. *Id.*, pp. 14-15.

Although plaintiff's pleading implies that some "crooked cops" and tenants do not want her to move, it also alleges that NYCHA Van Dyke Management Staff has attempted "to terminate [her] tenancy" because they "hold a grudge" against plaintiff and her son, who plaintiff characterizes as "tenants who work." *Id.*, p. 2. Since 2012, Ms. Eliot has been "filling out Order to Show Cause Applications" in Landlord Tenant Court "every two months," alleging that plaintiff owes back rent. *Id.*, pp. 5-6. Plaintiff contends that these applications were meritless, stating that she does not owe back rent and that Ms. Eliot has been "telling lies" about plaintiff and her son "in Landlord Tenant Court for many years." *Id.*, p. 5. However, plaintiff's pleading also states that plaintiff "visited the Brooklyn District Attorney's Office in reference to ... financial problems" that she had in late August 2014, applied for a "grant that pays back rent" in February 2015, has yet to receive the grant, and received an "Eviction Notice" on March 1, 2015. *Id.*, pp. 18-19, 21.

Plaintiff went to Landlord Tenant Court in an effort to prevent her eviction, but a Judge Scheckowitz refused to sign her proposed Order to Show Cause. *Id.*, p. 19.[1] Plaintiff's pleading asserts that "there is a conspiracy against [her]" involving the Landlord Tenant Court, the NYCHA and the NYPD. *Id.* Although plaintiff had yet to be evicted when she commenced this action on March 12, 2015, she alleges that she has not been afforded the requisite time to move out of her apartment because the Housing Assistant and the judge are "attempt[ing] to continue to steal from [her] apartment." *Id.*

*Plaintiff's Pleading*

On March 12, 2015, plaintiff commenced this action, alleging violations of Title VII and the Fourteenth Amendment of the United States Constitution and seeking only money damages. With respect to the Title VII claim, Plaintiff's pleading asserts that the NYCHA had no "reason not to hire [her] as a Housing Assistant." *Id.*, p. 17. With respect to the Fourteenth Amendment violation, plaintiff's pleading offers several different theories regarding NYCHA's involvement. At the start of the Attachment, plaintiff alleges that employees of the NYCHA, its Law Department, Brooklyn Landlord Tenant Court, and the New York City Police Department ("NYPD") "have conspired to sabotage [plaintiff's] life." *Id.*, p. 1. At the end of the Attachment, however, plaintiff implies that the NYCHA was not involved in the alleged wrongdoing, asserting that the NYCHA "needs to enact laws that protect tenants against Police Officers and Law Enforcement Personnel," that the NYCHA's claim of wanting tenants who work was "false advertising," and that her civil rights were violated by NYCHA's employees

---

[1]The pleading in *Greenidge v. Brooklyn Landlord Tenant Court*, No. 15-CV-1144 (SLT), also alleged that a judge refused to sign plaintiff's Order to Show Cause relating to the Notice of Eviction, but alleged that the judge was someone other than Judge Schenkowitz.

and residents. Id., pp. 22-23. In addition, the Attachment notes that her downstairs neighbor resembles former New York City Councilman Charles Barron, who once spoke on television about blacks with Irish surnames, and states: "If the person known as Tracey who has been stalking me is Charles Barron[']s daughter[,] Charles Barron is going to be labeled by me, and my family as a person who has used his position to sabotage my family." *Id.*, p. 21.

## *DISCUSSION*

### *Standard of Review*

Title 28, Section 1915(e)(2)(B), of the United States Code provides, in pertinent part, that "[n]otwithstanding any filing fee ... that may have been paid, the court shall dismiss the case at any time if the court determines that ... (B) the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). "An action is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotations and citations omitted). To state a claim, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Although a *pro se* complaint must contain sufficient factual allegations to meet the plausibility standard, it must be liberally construed and, however inartfully pleaded, held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A court must interpret the pleadings of a *pro se* plaintiff "to raise the strongest

arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

### *Subject-matter Jurisdiction*

Federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject-matter jurisdiction. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000).

> The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for "[f]ederal-question" jurisdiction, § 1332 for "[d]iversity of citizenship" jurisdiction. A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim "arising under" the Constitution or laws of the United States. She invokes jurisdiction under § 1332 when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount ....

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (internal citations omitted; brackets in original). "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 82 (2d Cir. 2008)) (internal quotation marks omitted).

The allegations in the Complaint establish that there is no basis for diversity jurisdiction. The Complaint states that Plaintiff resides in Brooklyn, New York, and defendant is a New York City agency. "[I]n the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented." *Hagans v. Lavine*, 415 U.S. 528, 537 (1974)

(quoting *Ex parte Poresky*, 290 U.S. 30, 31-32 (1933)). Accordingly, this Court must determine whether the complaint, liberally construed, suggests a basis for federal-question jurisdiction.

In this case, the pleading suggests two possible bases for federal-question jurisdiction. First, it specifically alleges that this Court has jurisdiction pursuant to Title VII and alleges that defendant has failed to hire her. Second, the Complaint alleges a violation of plaintiff's Fourteenth Amendment rights, suggesting that plaintiff may be seeking to state a civil rights claim under 42 U.S.C. § 1983. Accordingly, this Court will analyze whether plaintiff's pleading states a claim under either of these two statutes.

### Title VII

"Title VII makes it unlawful for an employer 'to fail or refuse to hire ... any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 273 (2d Cir. 2012) (quoting 42 U.S.C. § 2000e-2(a)(1)). However, "mistreatment ... is actionable under Title VII only when it occurs because of an employee's ... protected characteristic." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). Moreover, before filing a Title VII claim, a plaintiff must first exhaust his or her administrative remedies by timely filing of a charge of discrimination with the EEOC or an equivalent state or city agency. 42 U.S.C. § 2000e-5(e); *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (*per*

*curiam*). A district court can only "hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Housing Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (citing cases).

Plaintiff's pleading in this case alleges that the NYCHA violated Title VII by refusing to hire plaintiff as a Housing Assistant. However, while the pleading alleges that plaintiff is "multiracial" and of Barbadian and English descent, it does not attribute the NYCHA's failure to hire her to discrimination based on these protected characteristics. To the contrary, the pleading specifically alleges that plaintiff "cannot gain employment" because she has been "placed on observation by the NYPD." Attachment, p. 18. Moreover, while the pleading suggest that the NYPD's surveillance began after plaintiff "passed the Correction Officer exam," *id.*, p. 16, nothing in the pleading suggests that the NYPD's actions had anything to do with plaintiff's race or national origin. Accordingly, plaintiff's pleading does not state a claim under Title VII. *Patane v. Clark*, 508 F.3d at 112.

Even if plaintiff could allege that NYCHA's failure to hire her was attributable to race or national origin discrimination, it would be futile to permit plaintiff to amend her pleading at this juncture. There is nothing to suggest that plaintiff has administratively exhausted her Title VII claim. Exhaustion of those remedies is a precondition to filing a Title VII claim in federal court. See *Deravin*, 335 F.3d at 200.

**Section 1983**

Plaintiff's pleading alleges that this Court has jurisdiction pursuant to "[t]he 14th Amendment to the U.S. Constitution," Complaint, ¶ II, and that plaintiff's "Civil Rights, and

11

Constitutional Rights have been violated by NYCHA's Employees, and residents." Attachment, p. 23. These allegations suggest that plaintiff is attempting to bring a civil rights action under 42 U.S.C. § 1983 ("Section 1983"), which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

Section 1983 itself "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). In order to maintain a § 1983 action, a plaintiff must allege both that the conduct complained of was "committed by a person acting under color of state law" and "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). However, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Plaintiff cannot base a defendant's liability on *respondeat superior* or on "linkage in the ... chain of command." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

Plaintiff's pleading in this case does not state a § 1983 claim against the NYCHA, because it does not allege any Constitutional or federal statutory violations attributable to the defendant itself. At most, it alleges that Ms. Eliot and other NYCHA employees are engaged in actions which are either criminal or in violation of the NYCHA's own rules. For example, the

Attachment alleges that employees of the Van Dyke Houses have improperly divulged information from plaintiff's file to third parties, Attachment, p. 2; that "NYCHA Van Dyke Management Staff has attempted to terminate [plaintiff's] tenancy" solely because they "hold a grudge" against plaintiff and her son, *id.*; that Ms. Eliot "committed fraud" and/or perjury by lying to the Landlord Tenant Court and to police about plaintiff and her son, *id.*, pp. 5, 15; and that "Ms. Eliot and Van Dyke Management Staff" have allowed certain tenants "to reside ... in Van Dyke Houses illegally." *Id.*, p. 6. Since a § 1983 action cannot be based on *respondeat superior*, see *Hernandez*, 341 F.3d at 144, NYCHA cannot be liable under § 1983 for these wrongs allegedly committed by its employees.

Moreover, none of the acts attributed to NYCHA's employees rise to the level of a Constitutional violation or violate federal law. Fraud and perjury before the Landlord Tenant Court are state-law crimes, and permitting tenants to view plaintiff's housing file or to live in apartments for which they are ineligible might, at most, violate NYCHA's own regulations. These allegations do not suggest a violation of federal law or plaintiff's Constitutional rights and cannot constitute a basis for a § 1983 claim. See *Pitchell*, 13 F.3d at 547.

To be sure, plaintiff's pleading alleges some acts which are attributable to the NYCHA itself. Plaintiff alleges that the NYCHA not only refused to transfer her to another apartment, but sought to evict her. In addition, plaintiff alleges that NYCHA engaged in "false advertising" and conspired with the NYPD, which allegedly violates plaintiff's rights by, *inter alia*, engaging in warrantless searches of her home and hacking into her computer. However, none of these allegations suggests a viable civil rights claim.

13

First, "[i]t is well-settled that 'federal courts do not have subject matter jurisdiction over state eviction actions or other landlord-tenant matters.'" *Haynie v. New York Housing Auth.*, No. 14-CV-5633 (CBA), 2015 WL 502229, at *2 (E.D.N.Y. Feb. 5, 2015) (quoting *Oliver v. New York City Housing Auth.*, No. 10-CV-3204 (ARR), 2011 WL 839110, at *3 (E.D.N.Y. Mar. 2, 2011)). Although "tenants in public housing cannot be deprived of continued tenancy without due process of law," *Oliver*, 2011 WL 839110, at *3, there is nothing to suggest that plaintiff has not been afforded due process. Indeed, plaintiff's pleading implies that NYCHA has repeatedly commenced eviction proceeding against plaintiff in Landlord Tenant Court, and that plaintiff has gone to court to contest those proceedings. Any claims relating to the manner in which those proceedings were conducted should be raised in State court.

Second, "false advertising" is a state-law claim. *See* N.Y. Gen. Bus. Law § 350 (prohibiting false advertising). It is not a violation of federal statutory or Constitutional rights, and not actionable under § 1983. Third, plaintiff's allegations of conspiracy are conclusory, if not speculative and/or delusional. "It is well settled that claims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss'" because they fail to state a claim. *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)), *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (if a plaintiff fails "to allege facts that would provide 'plausible grounds to infer an agreement,'" the plaintiff has failed to state a conspiracy claim.). While it might be plausible to allege that the NYCHA has cooperated with the police and permitted cooperating witness to live in the Van Dyke Houses, plaintiff's pleading does not allege any plausible facts to suggest that NYCHA is complicit in

the warrantless searches, seizures, and other unconstitutional acts allegedly committed by the NYPD and the cooperators.

### *Warning*

This is the sixth case which plaintiff has filed with the Court since mid-August 2014. As noted above, the pleading in this action contains some of the same allegations as the pleading filed in *Greenidge v. Brooklyn Landlord Tenant Court*, No. 15-CV-1144 (SLT)(LB), a case which was filed ten days before this action and dismissed for failure to state a claim only a few days before this action was commenced. Two of plaintiff's other prior actions were dismissed for failure to state a claim in January 2015. *See Greenidge v. NYS Dep't of Labor*, No. 14-CV-4958 (SLT), 2015 WL 170574 (E.D.N.Y. Jan. 13, 2015); *Greenidge v. State Processing Ctr.*, 14-CV-7361 (SLT), 2015 WL 502231 (E.D.N.Y. Jan. 30, 2015). The pleadings in another two actions also failed to state a claim, although the Court granted leave to filed amended pleadings in those cases. *See Greenidge v. NYC Human Res. Admin.*, 14-CV-7360 (SLT), 2015 WL 518606 (E.D.N.Y. Feb. 5, 2015); *Greenidge v. Dep't of the Treasury - I.R.S.*, 15-CV-287 (SLT), 2015 WL 502232 (E.D.N.Y. Jan. 30, 2015).

"The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to [other parties] and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (internal quotations and citations omitted; brackets in *Lau*). "If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." *Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir. 2005)

(internal quotations and citations omitted). Plaintiff is warned that if she continues to file complaints which fail to state a claim and which are based on the same facts discussed in previous submissions, the Court may place restrictions on her future access to the Court.

## *CONCLUSION*

For the reasons set forth above, plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/s/ Sandra L. Townes

/SANDRA L. TOWNES
United States District Judge

Dated: Sept. 11, 2015
Brooklyn, New York